SALTER, J.
(concurring in part, dissenting in part).
I. Concurrence Regarding the Collateral Source Statute
I concur with that portion of the majority’s opinion holding that the Florida collateral source statute, section 768.76, Florida' Statutes (2012), expressly excludes the claim raised by Mr. and Mrs. Reale. Section 768.76(2)(b) defines “collateral sources,” those subject to the provisions of the statute, as excluding “benefits received under Medicare, or any other federal program providing for a Federal Government lien on or right of reimbursement from the plaintiffs recovery....” Although there are important differences between the federal Department of Health and Human Services’ administration of Parts A and B Medicare, and the manner in which Huma-na Medical Plan, Inc. (“Humana”), and other private, for-profit Medicare Advan *210 tage Organizations (“MAOs”) operate under Part C of Medicare, “Medicare Advantage is merely an alternative to traditional Medicare Parts A and B. .It is still. Medicare, governed by the Medicare Act and funded through the Medicare Trust Fund.” Jennifer Jordan, Is Medicare Advantage Entitled to Bring a Private Cause of Action Under the Medicare Secondary Payer Act?, 41 Wm. Mitchell L.Rev. 1408, 1409 (2015) (footnotes omitted).
The exclusion in section 768.76(2) applies ■ to the MAO-paid benefits at issue in the present case, and that conclusion requires a reversal of the final judgment and remand to the trial court.
However, Humana’s status as a nongovernmental, for-profit entity permits it to make private business choices regarding its remedies (unlike the federal agencies administering Parts A and B of Medicare). In the present case, I conclude that the financial and business decisions concededly made by Humana regarding the Reales’ case should control the further proceedings on remand following our reversal of the judgment below. ,
II. Dissent Regarding Circuit Court Jurisdiction
Given the unüsual record before us and the additional authority provided1 by Hu-mana itself, I respectfully dissent from the majority’s conclusion that reversal and remand must be accompanied by a directive from this Court to dismiss the Reales’ complaint for lack of jurisdiction. It may now be appropriate for the trial court to dismiss Humana as a party on remand, but the Reales also sought declaratory relief regarding, and recovery of, the funds in their attorney’s trust account.
The Reales are in their sixth year of attempting to resolve a common legal problem that should have a “just, speedy, and inexpensive”[20] resolution. Their common legal problem became, inadvertently, a case study in the relationships between federal and state courts in a subcategory of Medicare “Secondary Payer” disputes. The question before the trial court, and now us, is how a for-profit, Florida-licensed MAO — the appellant, Humana— and its enrolled member (Mrs. Reale) may proceed when they disagree regarding Hu-mana’s rights of reimbursement from the enrolled member’s personal injury settlement proceeds.
If Humana had issued an “organization determination”[21] as provided by federal regulation, if Humana had timely advised the Reales of their remedies to dispute such a determination, if Humana had not filed a federal lawsuit against the Reales before the state court lawsuit (and then dismissed that federal lawsuit), and if Hu-mana had not obtained a federal judgment for twice the amount of its claimed reimbursement from the insurer which paid the settlement, I would, have a different view of the case. As the record discloses, however, Humana proceeded in a different direction.
A. Facts and Procedural History
1. The Parties and the State Tort Suit
As an MAO, Humana administers a “Medicare Advantage health plan.” It is a for-profit entity and a wholly-owned subsidiary of one of the nation’s largest health insurers, Humana, Inc. MAOs are governed by federal statutes within Part G of Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395W-21 — 1395w-28 (2009).
Mary Reale sustained injuries from a fall at Hamptons West Condominium in *211 January 2009, At the time, she was 86 years old and enrolled in Humana’s “(Sold Plus HMO H1036-054C” Medicare Advantage plan. Between January and April 2009, she obtained treatment for her injuries, including total hip replacement surgery and extensive rehabilitative therapy. Humana paid $19,155.41 for those and other medical charges arising from her injury. Later in 2009, Mrs. Reale and her husband (a co-appellee here), August Reale, filed a circuit court personal injury suit against the condominium association and two individuals alleged to have been responsible for her injury.. The condominium association put its liability insurance carrier, Western Heritage Insurance. Company (“Western Heritage”), on notice of the claim.
Western Heritage ultimately agreed to settle the Reales’ claim against the condominium association for $115,000.00, with the two other defendants or their insurers contributing an additional $20,000.00. Counsel for the Reales in the personal injury lawsuit disclosed to Humana the prospects for settlement and requested information on the amounts paid by Humana for Mrs. Reale’s medical treatment. There followed a series of letters between Humana “cost, management” personnel (and, thereafter; Humana’s attorneys) regarding the appropriate amount necessary to settle Humanáis reimbursement claim. At no point did Humana issue any document identified as an “organization determination” [22] or advise the Reales and then-counsel that the ■ disagreement regarding the amount to be reimbursed was (a) final or (b) subject to an exclusive federal-administrative process and specific appellate remedies,[23]
To the contrary, Humana’s attorney’s letter of April 26, 2010, assérted that Hu-mana would “engage in an interactive process of negotiating resolution .of this lien to .avoid costly litigation.” (Emphasis provided). Three days later, Humana’s attorney advised that:
Also, based on our conversation, it seems that a dispute is going to exist with respect to any recovered funds to the extent of the Plan’s lien. As such, you have an obligation under the Florida Rules of Professional. Conduct to hold the funds to which the Plan asserts an interest -until we have resolved our dispute.
After reviewing-the law and consulting with your client, please advise of your client’s position. While my client is willing to litigate this matter, it stands ready to discuss a resolution to the case.
(Emphasis provided).'
.2. . The First Humana Federal Suit
After a brief further exchange of emails, Humana filed a federal-lawsuit against the Reales and their attorney on May 7, 2010, seeking declaratory relief, recovery of the reimbursement amount under the Medicare Secondary Payer -Act (the “MSP Act”),[24] and reimbursement under Mrs. Reale’s Gold Plus HMO plan as a matter of “express contract, a contract implied in law or a contract implied in fact.”[25] The lawsuit named Mrs., Reale and her attorney (“as a stakeholder”) as defendants. To keep the four lawsuits relating to this dispute separate, I will identify the Reales’ *212 2009 state court personal injury lawsuit as the “State Tort Suit,” and Humana’s 2010 federal lawsuit against Mrs. Reale and her attorney as the “First Humana Federal Suit.”
3. The State Settlement Proceeds Suit
Only four weeks after Humana filed the First Humana Federal Suit, the Reales filed the state court lawsuit that gave rise to the final judgment under review here: Reale v. Humana Med. Plan, Inc., No. 10-31906-CA-30 (Fla. 11th Cir. Ct. filed June 4, 2010). I will refer to this third lawsuit in the series as the “State Settlement Proceeds Suit.” By this time, the Reales and their attorney had obtained an order in the State Tort Suit whereby the full amount claimed by Humana, $19,155.41, had been placed in the attorney’s trust account pending resolution of the dispute, and the remaining settlement proceeds were disbursed to the Reales and their attorney.
In the State Settlement Proceeds Suit, the Reales sought a declaratory judgment regarding the respective interests of Mrs. Reale, her husband, her attorney, and Hu-mana in the escrowed settlement funds. The Reales asserted that Florida’s collateral sources statute, section 768.76, Florida Statutes (2012), applied, providing apportionment of the settlement proceeds based on pro rata reductions for the legal fees incurred in obtaining those proceeds and for the ratio of the actual recovery to the total value of the case had it gone to trial.
In response to the State Settlement Proceeds Suit, Humana filed a motion to dismiss for lack of subject matter jurisdiction and under the “first to file” rule (based on the fact that the First Humana Federal Suit was filed a month before the State Settlement Proceeds Suit). The circuit court below then stayed the State Settlement Proceeds Suit in deference to the First Humana Federal Suit.
Subsequently, Humana’s motion to dismiss was denied. At the circuit court hearing on Humana’s motion to dismiss, however, Humana’s counsel told the court that the State Settlement Proceeds Suit “is now moot due to the fact that Humana is no longer pursuing reimbursement from Mr. and Mrs. Reale personally.”
Consistent with that representation, Hu-mana voluntarily dismissed the First Hu-mana Federal Suit against Mrs. Reale and her attorney in November 2011.[26] The filing and prosecution of that lawsuit by Humana against Mrs. Reale for over 18 months bears significance in the analysis, however, because it demonstrates that Hu-mana never required or pursued any preliminary administrative remedies relating to its reimbursement dispute with Mrs. Reale. Instead, Humana pursued immediate recourse to litigation. After Humana voluntarily dismissed the First Humana Federal Suit, the circuit court lifted its stay of the State Settlement Proceeds Suit.
4. The Second Humana Federal Suit and the Western Heritage Appeal
Humana’s change in strategy became clear when, in January 2012, Humana sued Western Heritage in federal court for failing and refusing to pay Humana’s claimed reimbursement amount as “primary payer” of the settlement proceeds under 42 U.S.C. § 1395y(b)(2), the Medicare Secondary Payer (“MSP”) Act. Humana also sought to recover double its reimbursement claim, i.e., $38,310.82, from Western Heritage as a remedy for non-payment by Western Heritage under section 1395y(b)(3).
Consistent with its change in strategy, Humana did not join the Reales or their *213 attorney in this lawsuit (the “Second Hu-mana Federal Suit”). Humana prevailed against Western Heritage on both of these claims. Humana Med. Plan, Inc. v. W. Heritage Ins. Co., 94 F.Supp.3d 1285 (S.D.Fla.2015). Humana filed that opinion in this Court as additional authority promptly after it was issued. Western Heritage has appealed the final judgment against it,[27] but no stay has-been entered in the federal appeal. ■
5. Final Judgment and Appeal in the State Settlement Proceeds Suit
In the meantime, and notwithstanding Humana’s decision to pursue Western Heritage instead of the Reales, Humana’s answer and affirmative defenses filed in the State Settlement Proceeds Suit (after Humana had dismissed the First Humana Federal Suit) maintained that,.among other matters, the Florida collateral sources statute was preempted by federal law; that the Reales were not entitled to relief because they had not exhausted their federal administrative remedies; that their claims had to be brought in federal court; and that Humana-was entitled to the entire amount of its reimbursement claim, with no allowance for attorney’s fees or costs, because Humana had engaged in a lawsuit to compel reimbursement.;
The state trial court granted the Reales’ motion for a final declaratory judgment, concluding that it had subject matter jurisdiction and that “Florida Subrogation Law, including the provisions of Florida Statute § 768.76, is applicable to determine the extent of Defendant Humana’s right to reimbursement .from the Reale settlement proceeds.” The final declaratory judgment determined that (1) Mrs. Reale had recovered 33.75% of the full value, of her claims, (2) Humana’s claim for reimbursement should be reduced by applying the same ratio, (3) Mrs. Reale’s recovery had been farther reduced by the attorney’s fees and costs incurred in obtaining the settlement, and paid by her from the proceeds, (4) Humana’s claim for reimbursement should also bear a pro rata percentage of such attorney’s fees and costs, and (5) Humana’s reimbursement after such adjustments would be $3,685.03 of the $19,155.41 advanced. This appeal followed.
To recap, Humana’s otherwise straightforward reimbursement claim has included two federal lawsuits brought by Humana, and a resulting federal appeal, as well as proceedings in the two state-court lawsuits and this appeal. The aggregate legal bills are obviously many multiples of the original reimbursement claim. The judicial system’s objective of a “just, speedy, and inexpensive” determination- of the dispute has not been achieved.
B. Analysis
1. Mootness
Though agreeing that the judgment below must be reversed because of the inapplicability of the Florida collateral sources statute, on remand I would direct the trial court to consider whether the State Settlement Proceeds Suit is moot as to Humana, based on Humana’s counsel’s declaration in open court that it would not pursue recovery against the Reales further and on Humana’s complete recovery (and more) against Western Heritage on Humana’s underlying reimbursement claim. The disposition of the $19,155.41 in the Reales’ attorney’s trust account deposited over five years ago would then be ripe for determination. That .part of the controversy has not been concluded to the point that “a *214 judicial determination can have no actual effect.” Philip J. Padovano, Florida, Appellate Practice § 1.4 (2007 ed.) (citing Godwin v. State, 593 So,2d 211 (Fla.1992)).
2. The MSP Provisions as ' Applied to an MAO
Humana argues that it is entitled to enforce the exclusive federal jurisdiction provision applicable to the review of governmental decisions under 42 U.S.C. § 405(g). But the decision initially cited for that proposition, Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), antedated the establishment of MAOs by many years. Humana has not addressed its .special status as an MAO and its unusual actions in this case.
Unlike the Centers for Medicare & Medicaid Services (“CMS”), the governmental administrator of traditional Medicare on behalf of the Secretary of Health and Human Services, Humana is a for-profit, risk-taking entity that can (and does) pursue MSP Act reimbursement claims on its own. Humana and other MAOs retain the proceeds of those recoveries for their own account, as opposed to CMS (which obtains such reimbursements for return to the Medicare Trust Fund). A 2015 law réview article explains this difference:
Medicare is statutorily ' prohibited from making payments when there is a primary payer, with the exception of payments made when primary payment is not timely made, conditioned upon reimbursement should primary payment responsibility be determined. 42 U.S.C. § 1395w-22(a)(4) extends secondary payer status to Medicare Advantage by virtue of reference to payments made pursuant to 42 U.S.C. § 1395y(b)(2). But the statute does not incorporate any of the recovery provisions available at 42 U.S.C. § 1395y(b)(2)(B)(iii) or (iv) expressly granted to the United States. Instead, the statute provides that an. MAO “may” charge the responsible party or a beneficiary who has received payment for reimbursement of payments for which Medicare is prohibited from making or had made conditionally. It is interesting to note that this permission given to MAOs to bill for reimbursement appears > discretionary, whereas traditional Medicare conditional payments made by the Secretary “shall be” conditioned on reimbursement. If Congress were truly concerned about the recovery of payments made from the capitated payments to. MAOs, it could have easily required. that an MAO bill the responsible. party, but instead, it merely granted MAOs permission to do so. ,
42 C.F.R. § 422.108 specifically covers MSP procedures for MAOs. It states that CMS- does not pay for services when Medicare is not- primary and lays out responsibilities of MAOs to identify and coordinate benefits with primary payers,' reemphasizing the idea that MAOs are making payments on behalf of CMS. Interestingly, subsection (b) states that the “MA organization must ” identify primary payers and amounts owed', thereby demonstrating that Congress is capable of using mandatory language. Yet subsections (c), (d), and (e) employ discretionary language: “[an] MA organization may bill” for covered Medicare services. . When used in such close proximity, one cannot help but infer that the word selection was intentional. ■ ■ ■
It stands to reason that the government can require its contractors to consistently coordinate benefits in the same manner as the traditional program so that all beneficiaries receive the same base-level benefits and exclusions. But federal funds are not in play with regard to the MAO recovery itself since *215 such reimbursements are not returned to the Medicare Trust Fund. Part of the risk sharing is that MAOs'are paid a fixed capitation rate, whether beneficiaries seek medical treatment or not, and whether MAOs collect from third parties or not. The manner and extent to which an MAO elects to pursue its third-party recoveries are business expenses that should have factored into its benchmarks loheñ bidding to be an MAO. How MAOs conduct their ordinary course of business determines how much profit they can make contracting as an MAO and is not Congress’s concern, so long as Medicare beneficiaries receive the guaranteed benefits provided by law. If the principles of Medicare Advantage were founded on the idea that private sector insurance companies can deliver health care benefits more efficiently than the federal government, one has to assume that they are just as efficient and knowledgeable about recovering liens- from responsible third parties.
[[Image here]]
Any payment made by Medicare in contravention to the MSP [Act] is by definition an overpayment, and no different from any other payment made by the U.S. government that should not have been made. While the MSP [Act] contains some very specific recovery rights, at all times they are overpayments subject to standard federal debt recovery laws. If a conditional payment reimbursement demand by CMS goes unanswered for , 180 days, it must be referred to the Department of Treasury pursuant to the Debt Collection Improvement Act of 1996. If Treasury is unsuccessful in obtaining reimbursement, the claim is referred back to CMS or to the Depart ment of Justice, if it believes that litigation under the MSP [Act] would be successful in recovering the debt.
In contrast, MAOs are responsible for their own debt colleetions, as they do not have access to the Departments of Treasury or Justice. In practice, most MAOs .utilize ordinary collection agencies allegedly specializing in health care recoveries. And like most collection agencies, they are unrelenting in their demands for payment with little regard to the legalities that give rise to the claim.
Jordan, supra at 1, 1414-16, 1439-40 (emphasis provided; footnotes omitted).
As an-entity responsible for its own debt collection, Humana may have been free to file its own action against Mrs. Reale and her attorney without issüing an organization determination, notifying Mrs. Reale of her appellate remedies, or invoking federal administrative remedies. However, Hu-mana’s election of a different remedy against a different party (Western Heritage), and its announcement to the trial court below that Humana would not pursue recovery against the Reales, cleared the way for the trial court to determine what part, if any, of the escrowed settlement funds should be released to the Reales.
3. Other MAO-Enrollee Reimbursement Cases
But for the extraordinary actions taken by Humana in the present case[28] I might *216 reach a different result.[29] I reiterate that my analysis regarding the present case is based on the private, non-governmental business decisions permitted for MAOs in seeking reimbursement for then- own account rather than for reimbursement to the Medicare Trust Account, and on the unusual record presented to us.
III. Conclusion
I concur with the majority’s determination that section 768.76, Florida Statutes (2012), is inapplicable to Humana’s claim for reimbursement against the Reales, and that the final judgment must be reversed and remanded.[30] I respectfully dissent, however, with regard to the actions to be taken on remand. The trial court should be permitted to consider and determine whether Humana’s dismissal of its first federal lawsuit, its representations to the trial court and the Reales, and its judgment against Western Heritage, warrant the dismissal of Humana as a party in the state action for declaratory relief, and the trial court should adjudicate the rights of the Reales, if any, to the settlement funds held these many years in their attorney’s trust account.

. Fla. R. Civ. P. 1.010(a).

. See 42 C.F.R. §§ 422.566-.626 (2009).

. 42 C.F.R. § 422.566.

. 42 C.F.R. § 422.576 (2009).

. 42 U.S.C. § 1395y(b) (2009), discussed in detail below.

. Complaint at 6, Humana Med. Plan, Inc. v. Reale, No. 10-21493-Civ-MGC (S.D. Fla. filed May 7, 2010), ECFNo. 1.

. Notice of Voluntary Dismissal by Human Medical Plan, Inc., Humana Med. Plan, Inc. v. Reale, No. 10-21493-Civ-MGC (S.D.Fla. filed Nov. 9, 2011), ECFNo. 59.

. W. Heritage Ins. Co. v. Humana Med. Plan, Inc., No. 15-11436 (11th Cir. filed Apr. 2, 2015).

. Humana’s strategy in táking those actions, as a private entity entitled to pursue its own collection strategy, makes obvious business sense. Humana has chosen not to pursue its own enrollee member (now over 90 years old) for reimbursement, electing instead to pursue a double-the-claim recovery against an insurer as primary payer. Humana also established its right to a private right of action and double recovery against primary payers (rather than its enrbllees) under the MSP Act in In *216 re Avandia Mktg., Sales Practices & Prod. Liab. Litig., 685 F.3d 353 (3d Cir.2012).

. The jurisdictional analysis in a more typical MAO reimbursement dispute is detailed in Einhorn v. CarePlus Health Plans, Inc., 43 F.Supp.3d 1329 (S.D.Fla.2014). In that case, however, the MAO did not start a federal lawsuit to collect reimbursement from its en~ rollee, voluntarily dismiss that lawsuit, and abandon the claim against the enrollee in favor of a double recovery in a separate MSP Act lawsuit against a primary payer, leaving escrowed funds in a resulting limbo.

. I also concur with my colleagues' reference, authored originally by a number of federal appellate judges, to the Medicare Act as “one of the most completely impenetrable texts within the human experience.” (Majority op. at 199, citing Parra v. PacifiCare of Arizona, Inc., 715 F.3d 1146, 1149 (9th Cir.2013) (quoting Cooper Univ. Hosp. v. Sebelius, 636 F.3d 44, 45 (3d Cir.2010))).